UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

MEINA XIE, )
)
      Plaintiff, )
)
v. ) Civil Case No. 13-606 (RJL)
)
JOHN F. KERRY, as United States )
Secretary of State, )
)
      Defendant. )

MEMORANDUM OPINION
(February 27, 2014) [Dkt. ##6, 9]

FILED
MAR 05 2014
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Plaintiff Meina Xie ("Xie" or "plaintiff") commenced this action on April 30, 2013, seeking to compel John F. Kerry, in his official capacity as United States Secretary of State ("Secretary" or "defendant"), to process certain types of immigrant visas benefitting Chinese nationals. *See* Compl. [Dkt. #1]. Now before the Court are the defendant's Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment [Dkt. #6] and the plaintiff's Cross-Motion for Summary Judgment [Dkt. #9]. Upon consideration of the parties' pleadings, relevant law, and the entire record in this case, the defendant's Motion to Dismiss is GRANTED and plaintiff's Cross-Motion for Summary Judgment is DENIED.

BACKGROUND

This case involves a challenge to the Department of State's ("DOS") allocation of the limited number of U.S. entry visas granted to individuals in specific immigration

1

categories. Congress has imposed limitations via the Immigration and Nationality Act ("INA") on the number of visas that DOS may allocate on a per-country basis. *See* 8 U.S.C. § 1152. DOS is required to "make reasonable estimates of the anticipated numbers of visas to be issued . . . within each of the categories [established by Congress] and to rely upon such estimates in authorizing the issuance of visas." 8 U.S.C. §1153(g); *see also* Declaration of Charles W. Oppenheim ("Oppenheim Decl.") at ¶ 2 [Dkt. #6-1]. DOS assigns a "priority date" to all "documentarily qualified" applicants for U.S. visas based on the date their applications were received. *See* Oppenheim Decl. at ¶¶ 2-3.

DOS then establishes "cut-off dates" for each category of applicant based on the estimated number of available visas. *Id.* If the number of qualified applicants for a certain category exceeds the number of available visas, then all applicants with priority dates after the established cut-off date for that category are not granted visas. *Id.* Only applicants with priority numbers earlier than the established cut-off dates are scheduled for interviews and, thus, able to obtain visas to enter the United States. *See id.* at ¶ 4.

Xie, a native of China, is the beneficiary of an approved I-140 immigration petition in the "other worker" sub-category ("EW") of the larger "employment-based" immigration category ("EB-3").[1] *See* 8 U.S.C. § 1153(b)(3)(A); Plaintiff's Statement of Material Facts ("Pl.'s Facts") at ¶¶ 1-2 [Dkt. #7]. "Other workers" are defined as "qualified immigrants who are capable . . . of performing unskilled labor . . . for which

---

[1] EW, E3, and EB-3 are visa symbols used by DOS to reference different immigration visa categories. *See* Pl.'s Facts at ¶¶ 1-2; *see also* Oppenheim Decl. at ¶¶ 8-16. The EB-3 (employment-based) category is made up of 2 sub-categories in addition to EW: "skilled workers" and "professionals." *See* 8 U.S.C. § 1153(b)(3); Pl.'s Facts at ¶ 2. The skilled workers and professionals sub-categories are collectively referred to as "E3." *See* Pl.'s Facts at ¶ 2.

qualified workers are not available in the United States." 8 U.S.C. § 1153(b)(3)(A)(iii). Plaintiff has an EW priority date of January 17, 2007. Pl.'s Facts at ¶ 3. As of the filing of plaintiff's Motion for Summary Judgment, the China EW cut-off date was March 22, 2004, while the China E3 cut-off date was January 1, 2009. *Id.* at ¶¶ 11, 13.

Xie alleges that DOS is "intentionally and illegally retarding the China EW priority date[2] advancement" resulting in "China EW priority dates [that] are unjustifiably advancing far slower than the EW priority dates generally for natives from all other countries, and specifically far slower than China E3 . . . priority dates." Compl. at ¶ 6. Plaintiff further alleges that "[t]he entire world has cut-off date equivalence among all three EB-3 sub-categories, <u>except</u> China," Pl.'s Facts at ¶ 12, and therefore DOS is guilty of "illicit discrimination based on national origin in violation of (a) the Equal Protection Clause and (b) 42 U.S.C. § 2000d et seq.," Compl. at ¶ 24.

Plaintiff brings this case seeking a writ of mandamus compelling DOS to adjust the cut-off date for China EW immigration visa applicants to match the cut-off dates applied to other EB-3 sub-categories. *See* Compl. at ¶ 36; *see also* 28 U.S.C. § 1361. Additionally, plaintiff is seeking review of DOS's actions—or lack thereof—pursuant to

---

[2] Plaintiff seems to conflate priority dates with cut-off dates, alleging in her Complaint that DOS is "illegally retarding the China EW *priority date* advancement," *see* Compl. at ¶ 6 (emphasis added), while arguing in her Motion for Summary Judgment against the disparity between EW and E3 *cut-off dates*, *see* Pl.'s Opp'n to Def.'s Mot. Summ. J. ("Pl.'s Opp'n") at 2-3. As both parties agree that visa applicants' priority dates are determined by the dates on which their visa applications are received, and thus, conceivably, do not change, this Court will proceed upon its understanding that plaintiff is challenging the cut-off dates established by DOS for various *immigration categories*, and not the priority dates assigned to *individual applicants*. *See* Pl.'s Opp'n at 5; Oppenheim Decl. at ¶¶ 3-4. *See generally* 8 U.S.C. § 1153(e)(1) ("Immigrant visas . . . shall be issued to eligible immigrants in the order in which a petition on behalf of each such immigrant is filed with the Attorney General.").

3

the Administrative Procedures Act ("APA"), *see* Compl. at ¶ 40; *see also* 5 U.S.C. §§ 701-706, a declaratory judgment finding that DOS has failed to adhere to the INA, *see* Compl. at ¶¶ 45-46, and a permanent injunction enjoining DOS from "processing China EW cases disparately from all other EB-3 and EW cases," *see* Compl. at ¶ 50.[3]

## STANDARD OF REVIEW

The court may dismiss a complaint or any portion of it for failure to state a claim upon which relief may be granted. FED. R. CIV. P. 12(b)(6). In considering a motion to dismiss, however, the court may only consider "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). To survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[3] Although plaintiff seeks relief under both mandamus (28 U.S.C. § 1361), *see* Compl. at ¶¶ 35-38, and the APA (5 U.S.C. § 706(1)), *see* Compl. at ¶¶ 40-43, the Court will analyze defendant's Motion to Dismiss through the lens of plaintiff's APA claim. The relief available under the APA and mandamus are largely coextensive. Indeed, the APA may only compel "*discrete* agency action that it is *required to take*," and mandamus relief is "normally limited to enforcement of a specific, unequivocal command . . . about which [an official] had no discretion whatever." *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 63-64 (2004) (internal quotations and citation omitted). Moreover, as mandamus relief is "discretionary" and "a drastic remedy, to be invoked only in extraordinary circumstances, and only with great caution," *Weber v. U.S. Dep't of State*, 885 F. Supp. 2d 46, 52 (D.D.C. 2012) (internal quotations and citation omitted), it stands to reason that if plaintiff is not entitled to relief under the APA, she is likewise not entitled to relief under the more strenuous standard of mandamus. *See Bond v. U.S. Dep't of Justice*, 828 F. Supp. 2d 60, 75 (D.D.C. 2011) ("writs of mandamus compelling agency action are hardly ever granted) (internal quotations and citation omitted); *see also In re Watson*, 910 F. Supp. 2d 142, 148 (D.D.C. 2012) (dismissing case for failure to state a claim under APA or Mandamus Act, where agency action was "entirely discretionary").

4

In considering a Rule 12(b)(6) motion, the court must construe the complaint "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979) (internal quotations omitted). However, factual allegations, even though assumed to be true, must still "be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Moreover, the Court need not accept legal conclusions cast in the form of factual allegations, nor inferences drawn by a plaintiff if such inferences are not supported by the facts set out in the complaint. *See Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

## ANALYSIS

Under the APA, a federal court must compel agency action "unlawfully withheld or unreasonably delayed," *see* 5 U.S.C. § 706(1), and

> hold unlawful and set aside agency action, findings, and conclusions found to be (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (B) contrary to constitutional right, power, privilege, or immunity; (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (D) without observance of procedure required by law; (E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title . . . or; (F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

5 U.S.C. §706(2)(A)-(F). However, a claim brought pursuant to the APA "can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 64 (2004) (emphasis in original); *see also* 5 U.S.C. § 551(13) (defining "agency action" as an "agency rule, order, license, sanction, relief, or the equivalent denial thereof, or failure

5

to act"). An APA claim must fail where the agency action the plaintiff is seeking to compel is "committed to agency discretion by law." 5 U.S.C. § 701(a)(2). Unfortunately for the plaintiff, challenges of agency action pursuant to the APA may not simply seek a court order directing "wholesale improvement" of an agency program. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 891 (1990) ("[R]espondent cannot seek wholesale improvement of this program by court decree, rather than in the offices of the [agency] or the halls of Congress, where programmatic improvements are normally made.").

Xie fails to identify any *discrete* agency action that DOS is *required* to take. Instead, plaintiff argues that DOS is required to assign the same cut-off dates for unskilled Chinese workers as their skilled and professional counterparts. *See* Pl.'s Opp'n at 4, 6-7. I disagree. To say the least, it strains credulity for plaintiff to contend that a restructuring of the entire system by which DOS allocates immigration visas would somehow constitute a "discrete agency action." *See Norton*, 542 U.S. at 64 ("The limitation to discrete agency action precludes . . . broad programmatic attack[s]."); see also *Lujan*, 497 U.S. at 891 (APA challenge must be against "particular" agency action and may not seek "wholesale improvement").

Moreover, even if a restructuring of the visa allocation system could be construed as a discrete agency action, plaintiff's claim must still fail because she can point to no authority legally requiring DOS to apply the same cut-off date to skilled and unskilled workers. *See Li v. Kerry*, 710 F.3d 995, 1004 (9th Cir. 1995) ("We have no authority to compel agency action merely because the agency is not doing something we may think it should do."). To the contrary, Congress itself treated the sub-categories as different and

authorized DOS to use its discretion in estimating the number of available visas and establishing cut-off dates for each.[4] *See* 8 U.S.C. § 1153(g) ("the Secretary of State may make reasonable estimates of the anticipated numbers of visas to be issued during any quarter of any fiscal year within each of the categories."); *Beshir v. Holder*, No. 10-CV-652, 2014 WL 284886, at *6 (D.D.C. Jan. 27, 2014) ("because the pace of adjudication is discretionary, neither the APA nor the Mandamus Act provides a basis for this Court to assert jurisdiction") (citing *Norton*, 542 U.S. at 63-64). *Compare* 8 U.S.C. § 1153(b)(3)(A)(i) (Skilled workers), *and* 8 U.S.C. § 1153(b)(3)(A)(ii) (Professionals), *with* 8 U.S.C. § 1153(b)(3)(A)(iii) (Other workers).

## CONCLUSION

Thus, for all of the foregoing reasons, the Court GRANTS defendant's Motion to Dismiss and DENIES plaintiffs' Cross-Motion for Summary Judgment. An Order consistent with this decision accompanies this Memorandum Opinion.

/s/ Richard J. Leon
RICHARD J. LEON
United States District Judge

---

[4] Indeed, far from requiring DOS to apply the same cut-off date to skilled and unskilled workers, Congress actually chose to impose *an additional limitation* on the number of available EW immigration visas—expressly captioned "Limitation on other workers"—that it chose not to impose on either skilled workers or professionals. *See* 8 U.S.C. § 1153(b)(3)(B).

7