# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

MEINA XIE, )
 )
      Plaintiff, )
 )
v. ) Civil Case No. 13-0606 (RJL)
 )
REX W. TILLERSON, in his official )
capacity as Secretary of the U.S. )
Department of State,[1] )
 )
      Defendant. )

## MEMORANDUM OPINION
(June 14, 2017) [Dkt. #44]

**FILED**
**JUN 1 5 2017**
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Meina Xie alleges that the U.S. Department of State is illegally delaying her submission of a visa application. Before the Court is State's Motion to Dismiss for Lack of Subject Matter Jurisdiction and for Failure to State a Claim [Dkt. #44]. Upon consideration of the pleadings, relevant law, and the entire record herein, the Court will GRANT the motion and DISMISS the amended complaint.

## BACKGROUND

Meina Xie is a Chinese national seeking to immigrate to the United States. The background of her case was set forth at an earlier phase by our Court of Appeals and by this Court. *See Meina Xie v. Kerry*, 780 F.3d 405, 406–07 (D.C. Cir. 2015) ("*Meina Xie II*"); *Meina Xie v. Kerry* ("*Meina Xie I*"), 21 F. Supp. 3d 89, 90–91 (D.D.C. 2014). The

---

[1]     Pursuant to Federal Rule of Civil Procedure 25(d), Secretary Rex W. Tillerson is automatically substituted as a party for former Secretary John F. Kerry.

Court will thus limit its present statement of the facts and law to that necessary for the present disposition.

The Immigration and Nationality Act ("INA") limits the number of annual visas the Department of State may grant to applicants for immigration to the United States. *See* 8 U.S.C. §§ 1101 *et seq.* The statute creates a variety of visa categories and establishes a series of caps and provisions applicable to each category. At issue in this case is the employment based preference subcategory for "other workers," 8 U.S.C. § 1153(b)(3)(A)(iii), colloquially known as the "EB–3 EW" subcategory. As our Court of Appeals has explained, this subcategory "is subject to a particularly complicated set of provisions and caps." *Meina Xie II*, 780 F.3d at 406. It is limited to 5,000 visas annually. *See* 8 U.S.C. §§ 1153(b)(3)(A)(iii), 1153(b)(3)(B); 8 C.F.R. 204.5(*l*)(2); Nicaraguan Adjustment and Central American Relief Act, 105 Pub. L. 100, § 203(e), 111 Stat. 2193, 2199–2200 (1997). It is also subject to statutory limits on the total number of visas issued worldwide and per country each year. *See* 8 U.S.C. §§ 1151(a), 1152(a)(2). And, of particular relevance to this case, it is subject to a temporal directive contained in § 203(e)(1) of the INA, which provides that certain "[i]mmigrant visas . . . shall be issued to eligible immigrants in the order in which a petition in behalf of each such immigrant is filed." 8 U.S.C. § 1153(e)(1).

Obtaining an EB–3 EW visa is a three-step process. First, the alien's employer must file an application for labor certification with the Department of Labor ("DOL") requesting certification that there are no qualified workers in the United States available to fill a relevant job opening. *See* 8 U.S.C. § 1182(a)(5)(A)(i). Second, if the DOL provides the

requested certification, the employer may then file a Petition for Alien Worker ("Form I-140") requesting that the Department of Homeland Security's United States Citizenship and Immigration Services component ("USCIS") approve the alien for a visa in the EB–3 EW category. *See* 8 C.F.R. § 204.5(a). The date that a request for certification is accepted for processing by the DOL is called the "priority date." *See* 8 C.F.R. § 204.5(d); 22 C.F.R. § 42.53(a). Once an alien's priority date becomes "current," the alien is eligible to move on to the third step and apply to a State consular official for an immigrant visa, if the alien is then residing outside of the United States. *See* 22 C.F.R. §§ 42.51(b), 42.54(a)(1), 42.61(a).[2] An alien's priority date is current when it "is no later than the 'cutoff' date [established by State] for his or her group." *Meina Xie II*, 780 F.3d at 407; *see generally Zixiang Li v. Kerry*, 710 F.3d 995, 997 (9th Cir. 2013) (explaining application process for aliens residing inside the United States).

Xie contends that State has improperly set the cutoff date applicable to her group. Xie's employer completed the first two steps in the EB–3 EW visa process and Xie is the beneficiary of an approved Form I–140 from USCIS. Am. Compl. ¶¶ 8–11, 22 [Dkt. #43]. As Xie has correctly explained, possession of an approved I–140 entitles her to apply for an EB–3 EW immigration visa from State when her priority date is current. Am. Compl. ¶¶ 11–12. Xie's priority date is January 17, 2007. Am. Compl. ¶ 6. When Xie initially filed this lawsuit, she alleged that her priority date was not yet current. Compl. ¶ 14 [Dkt. #1]. Her original complaint sought, *inter alia*, a writ of mandamus compelling the

---

[2] If the alien is residing inside the United States when his priority date becomes current, the third step is to file an application for adjustment of immigration status with USCIS. *See* 8 U.S.C. § 1255(a).

3

State to adjust the cutoff date for the Chinese EB–3 EW immigration category so that her priority date would become current. *Meina Xie I*, 21 F. Supp. 3d at 91; Compl. ¶ 36. I dismissed the complaint for failure to state a claim because Xie had failed, in my view, to point to any specific statutory authority requiring State to adjust the cutoff date. *Meina Xie I*, 21 F. Supp. 3d at 93. The Court of Appeals reversed. It explained that "Xie *did* assert a specific statutory requirement" when she identified the temporal directive in § 203(e)(1) of the INA. *Meina Xie II*, 780 F.3d at 408. The court characterized Xie's complaint as "alleg[ing] that the Department of State is illegally delaying review of visa applications filed by persons in certain immigration categories," *id.* at 405, and found that "the consequences of State's current operations are quite consistent with Xie's allegations that it has inadequately heeded § 203(e)(1)'s priority principle," *id.* at 407.

On remand, State once again moved to dismiss for failure to state a claim. The Department argued that the Court of Appeals had misunderstood plaintiff's claim as Xie had never filed an EB–3 EW visa application. *See* Def. U.S. Dep't of State's Mot. to Dismiss, or, in the Alt., for Summ. J. 4 [Dkt. #33]. Xie conceded that she had yet to apply for a visa from State, Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss, or, in the Alt., for Summ. J. 10 [Dkt. #34], but her counsel represented to this Court in a sworn declaration that "[o]n information and belief, Ms. Xie DOES wish to submit an immigrant visa application promptly after the [State] system permits her to do so," Decl. of Christopher A. Teras ¶ 5 (Nov. 19, 2015) ("Teras Decl.") [Dkt. #34-2]. That opportunity arose less than four months later. State published a revised visa bulletin, and "[f]rom March [1], 2016 through June [30], 2016 Ms. Xie's January 17, 2007 priority date was current." Am.

4

Compl. ¶ 18.[3] Xie did not submit an application during this window. Am. Compl. ¶¶ 16–21. Instead, approximately three weeks after the visa application window closed, Xie moved for leave to file an amended complaint. She explained that an amended complaint was necessary to "update the facts" and to "provide clarity" in the wake of the decision by the Court of Appeals. Mem. in Supp. of Pl's. Mot. for Leave to Am. Compl. 2 [Dkt. #39-1]. Over State's objection, I granted Xie's motion for leave to file an amended complaint, and denied as moot State's motion to dismiss. *See* Order (Sept. 1, 2016) [Dkt. #42].

On September 1, 2016, Xie filed her amended complaint. The amended complaint states that Xie is "unable to complete the immigrant visa process until [State] complies with the law, and allows Ms. Xie's priority date to once again become 'current.'" Am. Compl. ¶ 19. It seeks: (1) a writ of mandamus compelling State to "process[] all immigrant visa cases in priority date order, including China Other Workers cases," Am. Compl. ¶ 44; (2) a declaration issued pursuant to the Administrative Procedure Act or the Declaratory Judgment Act declaring that State set the cutoff date in a manner that illegally delayed the submission of EB–3 EW visa applications by Chinese nationals, Am. Compl. ¶¶ 49, 53; and (3) a permanent injunction enjoining State from setting the cutoff date in this manner, Am. Compl. ¶ 56. On September 16, 2016, State filed the instant motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim. Xie opposed the motion, Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss ("Pl.'s Opp'n") [Dkt. #51], and State replied in support of the motion, Dep't of State's Reply in Supp. of its Mot. to Dismiss [Dkt. #53].

---

[3] In addition, the amended complaint filed after remand reveals that Xie's priority date was also current from November 1, 2013, to May 31, 2014. Am. Compl. ¶ 18.

## STANDARD OF REVIEW

State moves to dismiss the amended complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "The objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506–07 (2006) (internal citation omitted). When a defendant moves to dismiss for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), the plaintiff "bears the burden of demonstrating subject matter jurisdiction." *Shuler v. United States*, 531 F.3d 930, 932 (D.C. Cir. 2008). In evaluating whether the plaintiff has met this burden, the court will "assume the truth of all material factual allegations in the complaint and 'construe the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Am. Nat. Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting *Thomas v. Principi*, 394 F.3d 970, 972 (D.C. Cir. 2005)). "A district court deciding a motion to dismiss on jurisdictional grounds, such as standing, may consider evidence outside the complaint." *United States v. Emor*, 785 F.3d 671, 677 (D.C. Cir. 2015); *see also Am. Freedom Law Ctr. v. Obama*, 821 F.3d 44, 49 (D.C. Cir. 2016).

State also moves to dismiss the amended complaint for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "[W]hen a court decides whether a petitioner stated a valid claim for relief, a court must treat the complaint's factual allegations as true and may not use factual findings and legal conclusions drawn from outside the pleadings." *Emor*, 785 F.3d at 677.

## ANALYSIS

State's Rule 12(b)(1) argument asserts that Xie lacks constitutional standing. I must address this argument first. *See Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction[.]"); *Grocery Mfrs. Ass'n v. EPA*, 693 F.3d 169, 174 (D.C. Cir. 2012) ("[B]efore we even consider the merits of the petitions, we must determine whether any petitioner has standing to bring them to court.").

The Constitution limits federal jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. "'One element of the case-or-controversy requirement' is that plaintiffs 'must establish that they have standing to sue.'" *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013) (quoting *Raines v. Byrd*, 521 U.S. 811, 818 (1997)). To satisfy the standing requirement, Xie must show that she has suffered an injury that is "concrete and particularized" as well as "actual or imminent." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). That "injury must be 'fairly traceable to the challenged action of the defendant,'" and likely to "'be redressed by a favorable decision.'" *NB ex rel. Peacock v. Dist. of Columbia*, 682 F.3d 77, 81 (D.C. Cir. 2012) (quoting *Lujan*, 504 U.S. at 560–61). "[S]elf-inflicted" harm does "not constitute an 'injury' for purposes of standing." *Nat'l Treasury Emp.'s Union v. United States*, 101 F.3d 1423, 1429 (D.C. Cir.

1996). "[O]therwise, an enterprising plaintiff would be able to secure a lower standard for Article III standing" "by inflicting harm on themselves" that is not "fairly traceable" to any action of the defendant. *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015) (quoting *Clapper*, 133 S. Ct. at 1151–52).

State argues that Xie's injury is "self-inflicted" because Xie failed to apply for a visa when her priority date was current and she had the opportunity to do so. There is no dispute that Xie could have filed a visa application with State on at least two prior occasions. Most recently, Xie's priority date was "current"—meaning she was legally entitled to apply for an EB–3 EW immigrant visa—for the four month period stretching from March 1, 2016 to June 30, 2016. Am. Compl. ¶¶ 14, 18. This period of eligibility transpired after the remand by the Court of Appeals, and consequently, the Court of Appeals had no opportunity to consider its significance. In addition, the amended complaint reveals for the first time that Xie's priority date was also current from November 1, 2013, to May 31, 2014. Am. Compl. ¶ 18. State analogizes Xie's failure to apply for a visa during these windows to *National Family Planning & Reproductive Health Association, Inc. v. Gonzales*, 468 F.3d 826 (D.C. Cir. 2006). In that case, an association of non-profit family planning organizations sought to enjoin enforcement of a federal statute preventing recipients of federal family planning grants from discriminating against service providers who did not perform abortions. The association claimed that it was injured because its members did not know how to abide by the nondiscrimination provision and were therefore at risk of losing their funding. Our Circuit disagreed. It found that the association's injury was "self-inflicted" because the association "ha[d] the right to petition

8

[Health and Human Services] to adopt a rule clarifying [its members'] responsibilities" but "ha[d] never done so." *Id.* at 831. "As the association ha[d] *chosen* to remain in the lurch, it [could] not demonstrate an injury sufficient to confer standing." *Id.* According to State, that principle controls this case.

Xie's most compelling counterargument is that whatever opportunities she may have had to file her visa application previously, her priority date is no longer current, and thus that she remains injured by State's conduct because "she cannot *today* obtain an immigrant visa." Pl.'s Opp'n 11 (emphasis altered).[4] This argument assumes, obviously, that State's selection of the cutoff date applicable to EB–3 EW visa applications was in violation of § 203 of the INA. For the purpose of ruling on the motion to dismiss for want of standing, the Court "must assume that plaintiff[] will prevail on the merits of th[is] claim[.]" *City of Jersey City v. Consol. Rail Corp.*, 668 F.3d 741, 744 (D.C. Cir. 2012); *see also S. Cal. Edison Co. v. FERC*, 502 F.3d 176, 180 (D.C. Cir. 2007).

Xie's argument also assumes, however, that State's decision to set the cutoff date where it did was the *cause* of her current predicament. That, of course, is exactly the issue contested by State's motion to dismiss. "It is true that, '[f]or purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint.'" *Nat'l Treasury Emp.'s Union*, 101 F.3d at 1430

---

[4] Xie's other counterarguments barely merit a response. State is not "inappropriately inject[ing] factual issues at the [m]otion to [d]ismiss stage," Pl.'s Opp'n 11; the Department relies on facts that Xie herself introduced through her amended complaint, and in any event, "[a] district court deciding a motion to dismiss on jurisdictional grounds, such as standing, may consider evidence outside the complaint," *Emor*, 785 F.3d at 677. Nor can the Declaratory Judgment Act confer standing; that statute "is not an independent source of federal jurisdiction." *C&E Servs., Inc. of Wash. v. D.C. Water & Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002); *see also Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950).

(quoting *Metro. Wash. Airports Auth. v. Citizens for Abatement of Aircraft Noise, Inc.*, 501 U.S. 252, 264 (1991)). "But there is a difference between accepting a plaintiff's allegations of fact as true and accepting as correct the conclusions plaintiff would draw from such facts." *Id.* Here, plaintiff would have me accept as true not only the fact that she cannot *now* apply for a visa, but also the conclusion that this situation resulted from State's allegedly unlawful decision, and not from her own decision not to submit a visa application when she had the opportunity. That I cannot do. Plaintiff twice failed to apply for a visa when her priority date was current. Any harm resulting from those decisions was necessarily self-inflicted and thus not fairly traceable to the defendant.

My decision is confirmed by plaintiff's behavior in this litigation. Plaintiff's counsel represented to me following remand that Xie would promptly submit a visa application when her priority date became current. Teras Decl. ¶ 5. Based in part on that representation, I granted her motion for leave to file an amended complaint, and denied State's motion to dismiss. Yet, when Xie subsequently had the opportunity to file an immigrant visa application—which she concedes she could have done anytime between March 1, 2016 and June 30, 2016, Am. Compl. ¶¶ 14, 18—she declined.

Plaintiff's behavior raises even more questions when I look outside the pleadings, as I am permitted to do when "deciding a motion to dismiss on jurisdictional grounds, such as standing." *Emor*, 785 F.3d at 677. As recently as November 23, 2016, Xie represented to the Court that she remained "stymied until her 'priority date' becomes 'current,' allowing her to seek an immigrant visa at the U.S. Consulate in China." Pl.'s Opp'n 19–20. But that was not completely accurate. According to the then extant visa bulletin

10

published by State's Bureau of Consular Affairs, aliens in Xie's category and with her priority date were, in fact, eligible to apply for a visa in November 2016.[5] *See* U.S. Dep't of State, Pub. No. 9514, *Visa Bulletin: Immigrant Numbers for November 2016* 5 (Oct. 11, 2016).[6] Indeed, even now, State is still accepting visa applications from aliens in Xie's category and with her priority date, *see* U.S. Dep't of State, Pub. No. 9514, *Visa Bulletin: Immigrant Numbers for June 2017* 5 (May 9, 2017), and will continue to do so for at least another month, *see* U.S. Dep't of State, Pub. No. 9514, *Visa Bulletin: Immigrant Numbers for July 2017* 5 (June 9, 2017). In other words, the relief Xie purportedly seeks through this litigation—the right to file an EB–3 EW visa application—has not only been available to her on more than one prior occasion during this litigation, it is available to her *now* and has been for months!

---

[5] In November 2014, President Obama took a series of executive actions designed to "streamline" the nation's legal immigration process. *See Presidential Memorandum on Modernizing and Streamlining the United States Immigrant Visa System for the 21st Century*, 2014 Daily Comp. Pres. Doc. No. 881 (Nov. 21, 2014). As part of that initiative, State adopted a two-tiered cutoff date for immigrant visa applications. *See* U.S. Dep't of State, Pub. No. 9514, *Visa Bulletin: Immigrant Numbers for October 2015* 5–6 (Sept. 25, 2015). Under the new system, which became effective October 2015, an alien's priority date may become "current" for the purpose of filing a visa application (which State can then "immediate[ly]" begin adjudicating) before State is authorized to issue the visa. *Id.* According to the Obama Administration, the adoption of this two-tiered system will "facilitate worker mobility and ensure that the maximum number of visas is issued each year" by allowing State to better calculate demand and by affording applicants greater opportunity to remedy any application deficiencies. Exec. Office of the President, *Modernizing & Streamlining Our Legal Immigration System for the 21st Century* 29 (July 2015), *available at* https://obamawhitehouse.archives.gov/sites/default/files/docs/final_visa_modernization_report1.pdf. In this case, Xie's priority date was "current" for all purposes—meaning she could file an application *and* State could issue the visa—from November 1, 2013, to May 31, 2014, and again from March 1, 2016, to June 30, 2016. See Am. Compl. ¶¶ 14, 18, and relevant visa bulletins. Xie's priority date became "current" again in the more limited sense—meaning she could file an application and State could begin immediately processing the application (but could not yet issue the visa)—in November 2016.

[6] The visa bulletins cited in this opinion are available at https://travel.state.gov/content/visas/en/law-and-policy/bulletin.html.

So why is Xie still here? The Court can only guess. After all, this is not a case where "a defendant could engage in unlawful conduct, stop when sued to have the case declared moot, then pick up where he left off, repeating this cycle until he achieves all his unlawful ends." *Already, LLC v. Nike, Inc.*, 133 S. Ct. 721, 727 (2013). That is shown by the fact that if Xie had filed an immigrant visa application when her priority date was previously current, or if she did so now while it remains current, any future change in the cutoff date could no longer prevent her from doing so. In other words, it would be "absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* Perhaps Xie has not filed an application because she is not seeking to improve her own situation but that of the 2,796 other Chinese nationals whom she alleges are on an immigrant visa waiting list but whom are not joined to this action or otherwise before the Court. Am. Compl., at 2. Whatever the reason, her behavior is not consistent with that of someone genuinely seeking resolution of an actual case or controversy. Therefore, I must conclude that Xie "has *chosen* to remain in the lurch." *Nat'l Family Planning & Reprod. Health Ass'n, Inc.*, 468 F.3d at 831. She thus "cannot demonstrate an injury sufficient to confer standing." *Id.*

## CONCLUSION

For all of the above reasons, the Court must dismiss this case for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). An Order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge